Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY PORCHIA; ALLEGRA PORCHIA; MARILYN KAYE; and AARON LAMOREE; For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated,<br><br><br>                           Plaintiffs,<br><br>v.<br><br>BEST BUY CO., INC.,<br><br><br>                        Defendant. | Case No. 4:25-cv-00134<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Leroy Porchia, Allegra Porchia, Marilyn Kaye, and Aaron Lamoree, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Best Buy Co., Inc. ("Best Buy" or "Defendant"):

## I.    <u>INTRODUCTION AND SUMMARY</u>

1.    Best Buy represents itself as an electronics retailer. Best Buy operates Best Buy retail stores and its website, bestbuy.com, where it advertises, markets, and sells a wide variety of electronic goods throughout California and the United States. This lawsuit concerns only particular products sold by Best Buy that it advertises with false discounts—specifically its TVs and its major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (collectively, the "Products").

2.    Since at least February 2023, Best Buy has engaged in a massive and consistent false discount advertising scheme both in its retail stores and on its website by advertising perpetual or near-perpetual discounts on the Products. These discounts are taken from Best Buy's advertised reference prices for the Products. Best Buy represents these reference prices to be Best Buy's regular and normal prices of the Products, from which the advertised discounts are calculated. Best Buy prefaces the reference prices with the word "Was" (e.g., "Was $3,799.99") to further indicate that the higher reference price was Best Buy's previous and regular selling price for the Product. And in its order confirmation emails, Best Buy describes the higher reference price as the "Reg" price, further demonstrating that Best Buy's intent is for the consumer to understand the reference price to mean Best Buy's regular selling price for the Product. Best Buy's advertised discounts and reference prices are false because Best Buy rarely, if ever, offers the Products at their advertised "Was" reference price.

3.    Best Buy's deceptive pricing scheme is intended to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Best Buy perpetrates this illegal scheme in order to induce consumers to purchase the Products and to charge more for the Products than it otherwise could have charged.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

4. Best Buy's false discount advertising harms consumers like Plaintiffs by causing them to pay more than they otherwise would have paid and to buy Products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury."). Customers do not enjoy the actual discounts Best Buy promises them, and the Products are not in fact worth the amount that Best Buy represents to them. Best Buy's deceptive pricing scheme also artificially increases the demand for the Products and causes all customers, including Plaintiffs and Class members, to pay price premiums to Best Buy.

5. Best Buy's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*

6. Plaintiffs bring this lawsuit individually and on behalf of a class of California consumers who purchased from Best Buy one or more Products advertised with a discount since February 2023. Plaintiffs seek restitution and/or disgorgement for themselves and for each of the California class members. Additionally, Plaintiffs, acting as private attorneys general, seek public injunctive relief to protect the general public by enjoining Best Buy from engaging in the unlawful false advertising scheme alleged herein.

## II.     THE PARTIES

7. Plaintiff Leroy Porchia is a citizen and resident of the city of Antioch, in Contra Costa County, California, and is an unsophisticated consumer party.

8. Plaintiff Allegra Porchia is a citizen and resident of the city of Antioch, in Contra Costa County, California, and is an unsophisticated consumer party.

9. Plaintiff Marilyn Kaye is a citizen and resident of the city of Chatsworth, in Los Angeles County, California, and is an unsophisticated consumer party.

10. Plaintiff Aaron Lamoree is a citizen and resident of the city of Encinitas, in San

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Diego County, California, and is an unsophisticated consumer party.

11.     Defendant Best Buy Co., Inc. ("Best Buy") is a corporation chartered under the laws of Minnesota, with its principal place of business at 7601 Penn Ave S, Richfield, Minnesota 55423. Best Buy Co., Inc., owns and operates over 1,000 Best Buy brick-and-mortar retail stores throughout the United States, including 146 in California. Best Buy Co., Inc., also owns and operates the Best Buy website, bestbuy.com.

## III.     JURISDICTION AND VENUE

12.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Best Buy.

13.     **Personal Jurisdiction.** This Court has personal jurisdiction over Best Buy because, without limitation: (1) Best Buy is authorized to do business and regularly conducts business in the California; (2) the claims alleged herein took place in California; and/or (3) Best Buy has committed tortious acts within California (as alleged, without limitation, throughout this Complaint). Best Buy has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

14.     **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiffs Leroy Porchia and Allegra Porchia are California citizens who reside in this District (specifically, in Contra Costa County). Mr. and Mrs. Porchia also made their purchase from a Best Buy store located in this District.

## IV.     BEST BUY'S FALSE DISCOUNT ADVERTISING SCHEME

15.     Best Buy operates Best Buy retail stores and its website, bestbuy.com, where it advertises, markets, and sells a wide variety of electronic goods throughout California and the United States. Best Buy sells Products from national brands, as well as exclusive Products that are only available from Best Buy.

16.     Since at least February 2023, Best Buy has engaged in a massive and consistent false discount advertising scheme in its retail stores and on its website concerning the Products.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Specifically, Best Buy advertises perpetual or near-perpetual discounts on the Products. These discounts are taken from Best Buy's advertised reference prices for the Products, which are presented as Best Buy's own regular selling prices for the Products. However, unbeknownst to its customers, the advertised regular prices are false because the Products are never or almost never offered at the supposed regular price. Best Buy perpetrates this illegal scheme in order to induce consumers to purchase the Products and to increase the amount it can charge for the Products.

17.     Best Buy advertises discounts on its Products on the in-store price placards affixed to the Products, and on its website product list pages and individual product pages. Best Buy typically advertises the discounts by advertising a lower discounted price, next to a purported regular price (the "reference price"). Best Buy prefaces the reference price with the word "Was" (e.g., "Was $3,799.99") to further indicate that the higher reference price was Best Buy's previous and regular selling price for the Product. Best Buy also advertises a "Save $xx" dollar amount beside the discounted selling price.

18.     Additionally, in Best Buy's order confirmation emails, Best Buy describes the higher reference price as the "Reg" price. This further demonstrates that Best Buy's intent is for the consumer to understand the reference price to mean Best Buy's regular selling price for the Product.

19.     On Best Buy's in-store price placards, Best Buy also states that the "Offer ends mm/dd" (e.g., "Offer ends 9/25"), indicating that the advertised discount is a special limited-time offer. Best Buy advertises that its discounts are for a limited time, with a certain end date, in order to induce its customers to purchase the Products immediately so that they do not miss out on the supposed "sale."

20.     Best Buy's in-store advertised discounts, "Was" reference prices, "Save" dollar amounts, sale prices, and product price placards are identical in all of its retail stores throughout the country including its stores in California. Likewise, the bestbuy.com advertised discounts, "Was" reference prices, and sale prices are presented identically to visitors of the bestbuy.com website regardless of what state the visitor is from, including from California (and

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

meanwhile, these website prices and discounts are identical to BestBuy's in-store prices and discounts).

21.    Examples of Best Buy's false discount advertising scheme, both in-store and online, are provided below.

22.    **Example 1: LG Refrigerator.** The photo and screenshot at **Figure 1** below demonstrates Best Buy's advertising of false "Was" reference prices, false "sale" prices, false dollar savings, and false "Offer ends" dates for an LG Refrigerator. The top image is a photo taken in a Best Buy store on September 22, 2024, of the in-store price placard for an LG 29.5 Cu. Ft. 4-Door French Door Refrigerator (SKU No. 6397176). The bottom image is a screenshot of that same LG Refrigerator taken on the Best Buy website that same day.

**Figure 1:**    **LG 29.5 Cu. Ft. 4-Door French Door Refrigerator** (SKU No. 6397176)
**Best Buy Retail Store – 9/22/2024**



**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

2

**Best Buy Website – 9/22/2024**



3

4

5

6

7

8        23.        However, these sale advertisements were false. The $3,799.99 advertised "Was"

reference price was <u>not</u> Best Buy's regular selling price for the LG Refrigerator. In fact, in the

9

prior 90 days, Best Buy had <u>never</u> offered the LG Refrigerator at the $3,799.99 advertised

10

"Was" reference price; instead, Best Buy <u>always</u> offered and sold the refrigerator at a much

11

lower price, typically between $3,199.99 and $3,499.99. Customers did not "Save $600" by

12

purchasing the LG Refrigerator on September 22, 2024.

13

24.        Best Buy's statement that the discounted price was for a limited time ending on

14

September 25, 2024 was also false. On September 26, 2024 (the day after the sale purportedly

15

ended), Best Buy continued advertising the LG Refrigerator at the same $3,199.99

16

"discounted" price.

17

25.        **Example 2: Sony TV.** The below advertising for a Sony TV is another example

18

of Best Buy's false "Was" reference prices, false "sale" prices, false dollar savings, and false

19

"Offer ends" dates. Below at the top of **Figure 2** is an in-store photo taken on September 29,

20

2024, of the price placard for the Sony 75" Class BRAVIA 3 LED 4K UHD TV (SKU No.

21

6578582). The bottom image is a screenshot of that same TV taken on the Best Buy website the

22

previous day, September 28, 2024.

23

24

25

26

27

28

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 2:    Sony 75" Class BRAVIA 3 LED 4K UHD TV** (SKU No. 6578582)

**Best Buy Retail Store – 9/29/2024**



**Best Buy Website – 9/28/2024**



26.      These sale and discount advertisements for the TV were false. The $1,299.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Sony TV. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the Sony TV at the $1,299.99 advertised "Was" reference price; instead, Best Buy <u>always</u> offered and sold the TV at a much lower

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price, typically between $949.99 and $999.99. Customers did not "Save $350" by purchasing the TV on September 29, 2024.

27.    Best Buy's statement that the discounted price was for a limited time ending on September 29, 2024 was also false. On September 30, 2024 (the day after the sale purportedly ended), Best Buy continued advertising the Sony TV at the same $949.99 "discounted" price (see the screenshot below).

**Best Buy Website – 9/30/2024**



28.    **Example 3: Whirlpool Washer.** The below advertising for a Whirlpool Washer is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 3** is a screenshot of the Whirlpool 5.0 Cu. Ft. Front Load Washer (SKU No. 6313755) taken on the Best Buy website on August 17, 2024.

**Figure 3:    Whirlpool 5.0 Cu. Ft. Front Load Washer** (SKU No. 6313755)

**Best Buy Website – 8/17/2024**

29.    The $1,214.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Whirlpool Washer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the Whirlpool Washer at the $1,214.99 advertised "Was" reference price; instead, Best Buy

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    <u>always</u> offered and sold the Whirlpool Washer at a much lower price, typically between

2    $939.99 and $1,019.99. Customers did not "Save $195" by purchasing the Whirlpool Washer

3    on August 17, 2024.

4         30.    **Example 4: LG Dryer.** The below advertising for an LG Dryer is another

5    example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar

6    savings. Below at **Figure 4** is a screenshot of the LG 7.4 Cu. Ft. Electric Dryer (SKU No.

7    6529903) taken on the Best Buy website on August 5, 2024.

8
      **Figure 4:    LG 7.4 Cu. Ft. Electric Dryer** (SKU No. 6529903)
9
                          **Best Buy Website – 8/05/2024**
10

11   

12

13

14

15        31.    The $1,299.99 advertised "Was" reference price was <u>not</u> Best Buy's regular
16
     selling price for the LG Dryer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the LG
17
     Dryer at the $1,299.99 advertised "Was" reference price; instead, Best Buy <u>always</u> offered and
18
     sold the LG Dryer at $899.99. Customers did not "Save $400" by purchasing the LG Dryer on
19
     August 5, 2024.
20
          32.    **Example 5: KitchenAid Dishwasher.** The below advertising for a KitchenAid
21
     Dishwasher is another example of Best Buy's false "Was" reference prices, false "sale" prices,
22
     and false dollar savings. Below at **Figure 5** is a screenshot of the KitchenAid 24" Top Control
23
     Dishwasher (SKU No. 6423224) taken on the Best Buy website on July 21, 2024.
24

25

26

27

28

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Figure 5:**     **KitchenAid 24" Top Control Dishwasher**  (SKU No. 6423224)

**Best Buy Website – 7/21/2024**



33.     The $1,034.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the KitchenAid Dishwasher. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the KitchenAid Dishwasher at the $1,034.99 advertised "Was" reference price; instead, Best Buy <u>always</u> offered and sold the KitchenAid Dishwasher at a much lower price, typically between $799.99 and $849.99. Customers did not "Save $185" by purchasing the KitchenAid Dishwasher on July 21, 2024.

34.     **Example 6: Samsung Range.** The below advertising for a Samsung Range is another example of Best Buy's false "Was" reference prices, false "sale" prices, and false dollar savings. Below at **Figure 6** is a screenshot of a Samsung Bespoke 6.3 Cu. Ft. Range (SKU No. 6568999) taken on the Best Buy website on July 19, 2024.

**Figure 6:**     **Samsung Bespoke 6.3 Cu. Ft. Range** (SKU No. 6568999)

**Best Buy Website – 7/19/2024**



35.     The $1,889.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Samsung Range. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the Samsung Range at the $1,889.99 advertised "Was" reference price; instead, Best Buy

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

always offered and sold the Samsung Range at a much lower price, typically between $1,299.99 and $1,499.99 (and usually at $1299.99). Customers did not "Save $390" by purchasing the Samsung Range on July 19, 2024. To the contrary, the $1,499.99 "sale" price was $200 higher than the $1,299.99 price that Best Buy had usually offered the Samsung Range for in the prior 90 days.

36.    Best Buy's false discount advertising for the Products described above is typical and representative of the false discount advertising Best Buy perpetrates for all of its "discounted" Products.

37.    In the bestbuy.com online shopping cart, under "Order Summary," Best Buy further represents that the higher reference price was Best Buy's previous and regular selling price for the Product by describing the reference price as the "Original Price" (e.g., "Original Price $1,889.99"). Additionally, directly below that, Best Buy advertises a "Savings -$xx" dollar amount (e.g., "Savings -$390.00"). For example, below is a screenshot of these representations for the Samsung Bespoke 6.3 Cu. Ft. Range (Example 6 above) taken on January 2, 2025.

**Best Buy Online Shopping Cart – Order Summary – 1/02/2025**

## Order Summary

| | |
|---|---|
| Original Price | $1,889.99 |
| Savings | -$390.00 |
| Store Pickup | FREE |
| Estimated Sales Tax | $146.25 |

**Total**                                    **$1,646.24**

**Checkout**

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

38.    During the online checkout process, including on the final order submittal page where the customer clicks "Place Your Order," Best Buy stated in bold green font: "**You're saving $xx on your order today!**"

**Best Buy Online Shopping Cart – Order Submittal Page– 1/02/2025**

# Order Summary

**Store Pickup**
Pinole

Ready for pickup Fri, Jan 24.

 Samsung - Bespoke 6.3 Cu. Ft. Slide-In Electric Induction...              **$1,499.99**
                                                                                                Qty 1
                                                                                                Remove

🎁 Add a gift receipt

**Digital Delivery**
customer@gmail.com
Redemption information is emailed and available in your Order Details.

Available soon after receipt of ordered item(s).

Thrive Market - 30% Off First Order + $60 Gift (New...              **FREE**
                                                                    Qty 1
                                                                    Remove

| | |
|---|---|
| Item Subtotal | $1,499.99 |
| Store Pickup | FREE |
| Estimated Sales Tax | $146.25 |

Apply a Best Buy Tax Exempt Account Number  ⌄

**You're saving $390 on your order today!**

# Total              **$1,646.24**

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

39.      However, these sale advertisements and promises of savings by Best Buy were false. Best Buy never or almost never offered or sold the Products at the advertised reference price (i.e., the "Was" / "Original" price). Customers did not "Save $xx" by purchasing the Product on that day.

## V.      PLAINTIFFS' ALLEGATIONS ARE BASED ON THEIR COUNSEL'S COMPREHENSIVE INVESTIGATION INTO BEST BUY'S PRACTICES

40.      Plaintiffs' allegations concerning Best Buy's false discount advertising practices are based in part on daily screenshots and pricing data compiled from Plaintiffs' counsel's own scraping of the Best Buy website with a proprietary software program. Plaintiffs' counsel also investigated Best Buy's in-store practices by regularly visiting Best Buy retail stores. Counsel's investigation confirms that Best Buy has advertised perpetual or near-perpetual sales on the Products since at least February 2023.

41.      Counsel's analysis of the daily screenshots and pricing data compiled with counsel's proprietary software program shows that Best Buy's perpetual or near-perpetual sales on the Products have persisted on the Best Buy website continuously since at least February 2023.

42.      Based on counsel's investigation, Best Buy offers and advertises its Products with identical reference prices and at the same sale prices in both its online (bestbuy.com) and retail store sales channels. Furthermore, Best Buy's in-store advertised discounts, "Was" reference prices, "Save" dollar amounts, sale prices, and product price placards are identical in all of its retail stores throughout the country including its stores in California. Likewise, the bestbuy.com advertised discounts, "Was" reference prices, and sale prices are presented identically to visitors of the bestbuy.com website regardless of what state the visitor is from, including from California (and meanwhile, these website prices and discounts are identical to BestBuy's in-store prices and discounts).

43.      Best Buy effectively treats its online and in-store sales channels as one and the same. Customers can make purchases through the Best Buy website and pick up the Products

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

in-store. Best Buy also encourages its customers, while shopping in-store, to view Best Buy's website and use Best Buy's smartphone app to view and learn more about the Products.

## VI.    BEST BUY'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

44.    Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Best Buy materially impacts consumers' behavior. A reference price (e.g., the higher "Was" reference price advertised by Best Buy from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[1]

45.    When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Best Buy, advertise their products with inflated false reference

---

[1] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

prices and false discounts. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

46.     As a direct and proximate result of Best Buy's false reference prices and false discounts, Plaintiffs and Class members were harmed and lost money or property.

47.     First, Plaintiffs and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake and that the Products had not in fact been regularly offered at the higher listed price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

48.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

49.     Additionally, just as Best Buy intended, Best Buy's advertising of phony limited-time sales events created a false sense of urgency, which made consumers more likely to make a purchase.

50.     Second, Plaintiffs and Class members were harmed because they did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts Best Buy represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them. The Products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Best Buy.

CLASS ACTION COMPLAINT

- 15 -

51.     Third, Plaintiffs and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Best Buy's deceptive pricing scheme. Best Buy's false discount advertising scheme artificially increases consumer demand for Best Buy's Products, which shifts the demand curve and allows Best Buy to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Best Buy's false advertising scheme enabled Best Buy to charge everyone more for all of the Products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

52.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. Best Buy's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products or otherwise compete in the same market, but who (unlike Best Buy) are advertising valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

53.     Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

HATTIS & LUKACS
11711 SE 8th, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

54.     The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

55.     California law prohibits false discount advertising practices such as those perpetrated by Best Buy.

56.     California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

57.     California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a Product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

58.     Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

59.     In addition, the Federal Trade Commission's (FTC) regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. An advertised former price is genuine when "the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business,

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

honestly and in good faith—and, of course, not for the purpose of establishing a fictitious

higher price on which a deceptive comparison might be based." 16 C.F.R § 233.1(b). On the

other hand, an advertised former price is false when it is "an artificial, inflated price [that] was

established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain'

being advertised is a false one; the purchaser is not receiving the unusual value he expects."

16 C.F.R § 233.1(a).

60.    The FTC provides an example of a price comparison based on a fictitious former
price:

> John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual
> markup is 50 percent over cost; that is, his regular retail price is $7.50. In order
> subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10
> per pen. He realizes that he will be able to sell no, or very few, pens at this inflated
> price. But he doesn't care, for he maintains that price for only a few days. Then he
> "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X
> Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised
> "bargain" is not genuine. [16 C.F.R § 233.1(c).]

61.    A UCL claim may be predicated on a violation of the FTC's regulations under
the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567
(9th Cir. 2017).

62.    As alleged in detail above, Best Buy's advertised reference prices and discounts
violate California law because, based on the investigation of Plaintiffs' counsel, Best Buy's
advertised reference prices are inflated and fictitious, and Best Buy's advertised dollars-off
discounts are false. Best Buy's reference prices and discounts are false because Best Buy
advertises perpetual or near perpetual discounts off the Products, and thus rarely, if ever, offers
the Products at their advertised reference price (i.e., the "Was" price).

63.    Additionally, because Best Buy advertises perpetual or near perpetual discounts,
its advertised former prices were not true former prices and were not the prevailing market
price in the three months immediately preceding the advertisement. This is true for Best Buy's
exclusive Products because Best Buy's own actual selling prices determine the prevailing
market price. *See People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409
(2019). This is also true for Best Buy's non-exclusive Products "because in competitive

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17.

64.     Since Best Buy's advertised former prices are consistently higher than their actual prices, the only reasonable inference is that those advertised former prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell products for prices' for 'less than the market rates at which those products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024) (same); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016) (same).

65.     Further, on the rare occasions that Best Buy offered some of its Products at their reference price, Best Buy did so in bad faith for the sole purpose of "establishing" the Product's reference price in an attempt to exculpate itself from legal liability for its illegal pricing scheme. It was Best Buy's intent and expectation to sell few if any Products at their reference price, and in fact Best Buy sold no, or practically no, Products at their reference price. A reference price is still false under these circumstances. *See* 16 C.F.R § 233.1(a–c), described above at Paragraphs 59–60. A reference price would also not be the prevailing market price under these circumstances.

66.     Best Buy's false reference price and false discount representations were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased the Products, and consumers purchased the Products on the basis of these representations in order to enjoy the purported discounts.

67.     Best Buy's marketing plan is to deceive its customers into believing that the Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain.

HATTIS & LUKACS
11711 SE 8th, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

68.     The false or misleading nature of Best Buy's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

69.     As a direct and proximate result of Best Buy's acts and omissions, all California consumers who have purchased a Product from Best Buy that was advertised with a reference price or purported discount have been harmed and have lost money or property.

70.     Best Buy continues to advertise false reference prices and false discounts to this day. There is no reason to believe that Best Buy will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Best Buy were to cease its unlawful practices, Best Buy can and is likely to re-commence these unlawful practices.

71.     In acting toward consumers and the general public in the manner alleged herein, Best Buy acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiffs, the Class, and the public.

## VII.   PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiffs Leroy Porchia and Allegra Porchia

72.     Plaintiffs Leroy Porchia and Allegra Porchia are, and at all relevant times have been, citizens and residents of the city of Antioch, in Contra Costa County, California.

73.     Mr. and Mrs. Porchia are victims of Best Buy's false discount advertising scheme.

74.     As detailed above, Best Buy's false discount advertising practices have been ongoing since at least February 2023. During this time, Mr. and Mrs. Porchia have purchased Products from Best Buy that were advertised with a false reference price and a false discount.

75.     For example, on March 12, 2023, Mr. and Mrs. Porchia visited the Best Buy website to shop for a washer and dryer.

76.     While browsing the Best Buy website, Mr. and Mrs. Porchia viewed pricing and discount representations similar to those described above at Paragraphs 22–35.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

77.    For example, Mr. and Mrs. Porchia viewed webpages advertising the Maytag - 4.7 Cu. Ft. High Efficiency Smart Top Load Washer with Extra Power Button, SKU No. 6396143 (the "Maytag Washer"). On the webpages, Best Buy advertised that the Maytag Washer was currently on sale for $849.99; that the Maytag Washer "Was $1,034.99"; and that the customer would "Save $185.00" by buying the Maytag Washer now. Additionally, on the final page of the checkout process by the "Place Your Order" button, Best Buy stated in bold green font: **"You're saving $360 on your order today!"** ($360 was the total amount of the purported savings for both this Maytag Washer and the Maytag Dryer described below).

78.    Relying on Best Buy's representations, Mr. and Mrs. Porchia reasonably believed that the Maytag Washer was normally offered and sold by Best Buy for the $1,034.99 "Was" price. Mr. and Mrs. Porchia reasonably believed that the Maytag Washer was thereby worth and had a market value of $1,034.99. Mr. and Mrs. Porchia reasonably believed that the advertised sale price of $849.99 represented a special and unusual bargain, where Best Buy was temporarily offering the Maytag Washer at $185 off the regular and normal selling price of $1,034.99. Relying on Best Buy's representations, Mr. and Mrs. Porchia purchased the Maytag Washer.

79.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. and Mrs. Porchia, the $1,034.99 advertised "Was" and "Reg" reference price was <u>not</u> Best Buy's regular selling price for the Maytag Washer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the Maytag Washer at the $1,034.99 advertised regular price; instead, Best Buy had <u>always</u> offered and sold the Maytag Washer at a much lower price, typically between $799.99 and $879.99. The Maytag Washer was not in fact worth the $1,034.99 price that Best Buy had led them to believe.

80.    Mr. and Mrs. Porchia also viewed webpages on that same day March 12, 2023, advertising the Maytag - 7.4 Cu. Ft. Smart Gas Dryer with Extra Power Button, SKU No. 6396142 (the "Maytag Dryer"). On the webpages, Best Buy advertised that the Maytag Dryer was currently on sale for $949.99; that the Maytag Dryer "Was $1,124.99"; and that the customer would "Save $175.00" by buying the Maytag Dryer now. Additionally, on the final

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

page of the checkout process by the "Place Your Order" button, Best Buy stated in bold green font: "**You're saving $360 on your order today!**" ($360 was the total amount of the purported savings for both this Maytag Dryer and the Maytag Washer described above).

81.    Relying on Best Buy's representations, Mr. and Mrs. Porchia reasonably believed that the Maytag Dryer was normally offered and sold by Best Buy for the $1,124.99 "Was" price. Mr. and Mrs. Porchia reasonably believed that the Maytag Dryer was thereby worth and had a market value of $1,124.99. Mr. and Mrs. Porchia reasonably believed that the advertised sale price of $949.99 represented a special and unusual bargain, where Best Buy was temporarily offering the Maytag Dryer at $175 off the regular and normal selling price of $1,124.99. Relying on Best Buy's representations, Mr. and Mrs. Porchia purchased the Maytag Dryer.

82.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. and Mrs. Porchia, the $1,124.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the Maytag Dryer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the Maytag Dryer at the $1,124.99 advertised regular price. The Maytag Dryer was not in fact worth the $1,124.99 price that Best Buy had led them to believe.

83.    Due to a delivery issue, on March 19, 2023, Mr. and Mrs. Porchia canceled the website order and went to a nearby Best Buy retail store located at 1490 Fitzgerald Dr, Pinole, California 94564 to re-order both the Maytag Washer and the Maytag Dryer in person.

84.    In the store, Mr. and Mrs. Porchia viewed pricing and discount representations similar to those described above at Paragraphs 22 and 25. Best Buy advertised the Maytag Washer, including on the in-store price placard, with the same "Was $1,034.99" reference price, the same $849.99 selling price, and the same "Save $175.00" savings inducement that Mr. and Mrs. Porschia had previously seen on Best Buy's website. Best Buy advertised the Maytag Dryer, including on the in-store price placard, with the same "Was $1,124.99" reference price, the same $949.99 selling price, and the same "Save $185.00" savings inducement that Mr. and Mrs. Porchia had previously seen on Best Buy's website. The in-store

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price placards on the Maytag Washer and on the Maytag Dryer also stated that these offers were only valid for a limited time. Relying on Best Buy's representations, Mr. and Mrs. Porchia purchased the Maytag Washer and Dryer in the Best Buy store.

85.     Best Buy then sent Mr. and Mrs. Porchia an order confirmation email regarding their in-store purchase of the Maytag Washer and Dryer. In the order confirmation email, Best Buy used the term "Reg" to describe the $1,034.99 reference price for the Maytag Washer and the $1,124.99 reference price for the Maytag Dryer—again confirming that the higher reference prices were Best Buy's usual and regular selling prices for the Products. Below are screenshots from the order confirmation email received by Mr. and Mrs. Porchia.

**Screenshots From Order Confirmation Email Received After In-Store Purchases**



86.     Best Buy's advertised reference prices and discounts were material misrepresentations and inducements to Mr. and Mrs. Porchia's purchases.

87.     Mr. and Mrs. Porchia reasonably relied on Best Buy's material misrepresentations regarding the advertised reference prices and discounts. If Mr. and Mrs. Porchia had known the truth, they would not have purchased the Maytag Washer and the Maytag Dryer at the prices they paid.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

88.     As a direct and proximate result of Best Buy's acts and misrepresentations, Mr. and Mrs. Porchia were harmed, suffered an injury-in-fact, and lost money or property.

89.     Mr. and Mrs. Porchia have a legal right to rely now, and in the future, on the truthfulness and accuracy of Best Buy's representations regarding the advertised reference prices and discounts for its Products.

90.     Mr. and Mrs. Porchia face an imminent threat of future harm. Mr. and Mrs. Porchia would purchase Products from Best Buy again in the future if they could have confidence regarding the truth of Best Buy's price and discount representations. But without an injunction, Mr. and Mrs. Porchia have no realistic way of knowing which, if any, of Best Buy's reference prices, discounts, and sales for the Products are true.

91.     Mr. and Mrs. Porchia will be harmed if, in the future, they are left to guess as to whether Best Buy is providing a legitimate sale or not, and whether its Products are actually worth the amount that Best Buy is representing.

92.     If Mr. and Mrs. Porchia were to purchase Products again from Best Buy without Best Buy having changed its unlawful and deceptive conduct alleged herein, Mr. and Mrs. Porchia would be harmed on an ongoing basis and/or would be harmed once or more in the future.

93.     The deceptive practices and policies alleged herein, and experienced directly by Mr. and Mrs. Porchia, are not limited to any single Product. Rather, Best Buy's deceptive advertising and sales practices, which advertise and state false reference prices and false dollar "savings", were, and continue to be, systematic and pervasive across Best Buy's Products.

**Plaintiff Marilyn Kaye**

94.     Marilyn Kaye is, and at all relevant times has been, a citizen and resident of the city of Chatsworth, in Los Angeles County, California.

95.     Ms. Kaye is a victim of Best Buy's false discount advertising scheme.

96.     As detailed above, Best Buy's false discounting practices have been ongoing since at least February 2023. During this time, Ms. Kaye has purchased Products from Best Buy which were advertised with false reference prices and false discounts.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

97.     For example, on December 15, 2023, Ms. Kaye visited the Best Buy retail store located at 9330 N Winnetka Ave, Chatsworth, California 91311, to shop for a washer and dryer.

98.     While in the Best Buy store, Ms. Kaye viewed pricing and discount representations similar to those described above in Paragraphs 22 and 25.

99.     For example, Ms. Kaye viewed the price placard affixed to a LG - 4.5 Cu. Ft. High-Efficiency Stackable Smart Front Load Washer with Steam and Built-In Intelligence, SKU No. 6419621 (the "LG Washer"). The placard stated that the LG Washer was currently on sale for $799.99; that the LG Washer "Was $1,099.99"; and that the customer would "Save $300.00" by buying the LG Washer now. The placard also stated that this offer was only valid for a limited time.

100.    Relying on Best Buy's representations, Ms. Kaye reasonably believed that the LG Washer was normally offered and sold by Best Buy for the $1,099.99 "Was" price. Ms. Kaye reasonably believed that the LG Washer was thereby worth and had a market value of $1,099.99. Ms. Kaye reasonably believed that the advertised sale price of $799.99 represented a special and unusual bargain, where Best Buy was temporarily offering the LG Washer at $300 off the regular and normal selling price of $1,099.99. Relying on Best Buy's representations, Ms. Kaye purchased the LG Washer.

101.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Kaye, the $1,099.99 advertised "Was" reference price was not Best Buy's regular selling price for the LG Washer. In fact, in the prior 90 days, Best Buy had never offered the LG Washer at the $1,099.99 advertised regular price; instead, Best Buy had always offered and sold the LG Washer at a much lower price, typically between $749.99 and $849.99. The LG Washer was not in fact worth the $1,099.99 price that Best Buy had led her to believe.

102.    That same day, Ms. Kaye also viewed the price placard affixed to a LG - 7.4 Cu. Ft. Stackable Smart Gas Dryer with Steam and Built-In Intelligence, SKU No. 6419625 (the "LG Dryer"). The placard stated that the LG Dryer was currently on sale for $899.99; that the

HATTIS & LUKACS
11711 SE 8th, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

LG Dryer "Was $1,199.99"; and that the customer would "Save $300.00" by buying the LG Dryer now. The placard also stated that this offer was only valid for a limited time.

103.    Relying on Best Buy's representations, Ms. Kaye reasonably believed that the LG Dryer was normally offered and sold by Best Buy for the $1,199.99 "Was" price. Ms. Kaye reasonably believed that the LG Dryer was thereby worth and had a market value of $1,199.99. Ms. Kaye reasonably believed that the advertised sale price of $899.99 represented a special and unusual bargain, where Best Buy was temporarily offering the LG Dryer at $300 off the regular and normal selling price of $1,199.99. Relying on Best Buy's representations, Ms. Kaye purchased the LG Dryer.

104.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Kaye, the $1,199.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the LG Dryer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the LG Dryer at the $1,199.99 advertised regular price. The LG Dryer was not in fact worth the $1,199.99 price that Best Buy had led her to believe.

105.    Best Buy's advertised reference prices and discounts were material misrepresentations and inducements to Ms. Kaye's purchases.

106.    Ms. Kaye reasonably relied on Best Buy's material misrepresentations regarding the advertised reference prices and discounts. If Ms. Kaye had known the truth, she would not have purchased the LG Washer and the LG Dryer at the prices she paid.

107.    As a direct and proximate result of Best Buy's acts and misrepresentations, Ms. Kaye was harmed, suffered an injury-in-fact, and lost money or property.

108.    Ms. Kaye has a legal right to rely now, and in the future, on the truthfulness and accuracy of Best Buy's representations regarding the advertised reference prices and discounts for its Products.

109.    Ms. Kaye faces an imminent threat of future harm. Ms. Kaye would purchase Products from Best Buy again in the future if she could have confidence regarding the truth of Best Buy's price and discount representations. But without an injunction, Ms. Kaye has no

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

realistic way of knowing which, if any, of Best Buy's reference prices, discounts, and sales for the Products are true.

110.    Ms. Kaye will be harmed if, in the future, she is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether its Products are actually worth the amount that Best Buy is representing.

111.    If Ms. Kaye were to purchase Products again from Best Buy without Best Buy having changed its unlawful and deceptive conduct alleged herein, Ms. Kaye would be harmed on an ongoing basis and/or would be harmed once or more in the future.

112.    The deceptive practices and policies alleged herein, and experienced directly by Ms. Kaye, are not limited to any single Product. Rather, Best Buy's deceptive advertising and sales practices, which advertise and state false reference prices and false dollar-off "savings", were, and continue to be, systematic and pervasive across Best Buy's Products.

**Plaintiff Aaron Lamoree**

113.    Plaintiff Aaron Lamoree is, and at all relevant times has been, a citizen and resident of the city of Encinitas, in San Diego County, California.

114.    Mr. Lamoree is a victim of Best Buy's false discount advertising scheme.

115.    As detailed above, Best Buy's false discounting practices have been ongoing since at least February 2023. During this time, Mr. Lamoree has purchased at least one Product from Best Buy which was advertised with a false reference price and a false discount.

116.    For example, on July 16, 2024, Mr. Lamoree visited the Best Buy website to shop for a washing machine.

117.    While browsing the Best Buy website, Mr. Lamoree viewed pricing and discount representations similar to those described above at Paragraphs 22–35.

118.    For example, Mr. Lamoree viewed webpages advertising the LG - 5.0 Cu. Ft. High-Efficiency Front Load Washer with 6Motion Technology, SKU No. 6529900 (the "LG Washer"). On the webpages, Best Buy advertised that the LG Washer was currently on sale for $699.99; that the LG Washer "Was $999.99"; and that the customer would "Save $300" by buying the LG Washer now. Additionally, on the final page of the checkout process by the

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

"Place Your Order" button, Best Buy stated in bold green font: "**You're saving $300 on your order today!**"

119.    Relying on Best Buy's representations, Mr. Lamoree reasonably believed that the LG Washer was normally offered and sold by Best Buy for the $999.99 "Was" price. Mr. Lamoree reasonably believed that the LG Washer was thereby worth and had a market value of $999.99. Mr. Lamoree reasonably believed that the advertised sale price of $699.99 represented a special and unusual bargain, where Best Buy was temporarily offering the LG Washer at $300 off the regular and normal selling price of $999.99. Relying on Best Buy's representations, Mr. Lamoree purchased the LG Washer.

120.    Best Buy sent Mr. Lamoree an order confirmation email where Best Buy further represented that the $999.99 reference price was Best Buy's regular selling price by using the term "Reg" to describe the reference price.

121.    However, Best Buy's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Lamoree, the $999.99 advertised "Was" reference price was <u>not</u> Best Buy's regular selling price for the LG Washer. In fact, in the prior 90 days, Best Buy had <u>never</u> offered the LG Washer at the $999.99 advertised regular price; instead, Best Buy had <u>always</u> offered and sold the LG Washer at a much lower price, typically between $699.99 and $799.99. The LG Washer was not in fact worth the $999.99 price that Best Buy had led him to believe.

122.    Best Buy's advertised reference price and discounts were material misrepresentations and inducements to Mr. Lamoree's purchase.

123.    Mr. Lamoree reasonably relied on Best Buy's material misrepresentations regarding the advertised reference price and discounts. If Mr. Lamoree had known the truth, he would not have purchased the LG Washer at the price he paid.

124.    As a direct and proximate result of Best Buy's acts and misrepresentations, Mr. Lamoree was harmed, suffered an injury-in-fact, and lost money or property.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

125.    Mr. Lamoree has a legal right to rely now, and in the future, on the truthfulness and accuracy of Best Buy's representations regarding the advertised reference prices and discounts for its Products.

126.    Mr. Lamoree faces an imminent threat of future harm. Mr. Lamoree would purchase Products from Best Buy again in the future if he could have confidence regarding the truth of Best Buy's price and discount representations. But without an injunction, Mr. Lamoree has no realistic way of knowing which, if any, of Best Buy's reference prices, discounts, and sales for the Products are true.

127.    Mr. Lamoree will be harmed if, in the future, he is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether its Products are actually worth the amount that Best Buy is representing.

128.    If Mr. Lamoree were to purchase Products again from Best Buy without Best Buy having changed its unlawful and deceptive conduct alleged herein, Mr. Lamoree would be harmed on an ongoing basis and/or would be harmed once or more in the future.

129.    The deceptive practices and policies alleged herein, and experienced directly by Mr. Lamoree, are not limited to any single Product. Rather, Best Buy's deceptive advertising and sales practices, which advertise and state false reference prices and false dollar-off "savings", were, and continue to be, systematic and pervasive across Best Buy's Products.

## CLASS ALLEGATIONS

130.    Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

131.    **Class Definition:** Plaintiffs seek to represent the following Class:

> **All persons who, while in California, purchased from Best Buy one or more Products[2] advertised with a discount on or after February 2, 2023.**

---

[2] "Products" are defined in this Complaint as TVs and major appliances, such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

132.    Specifically excluded from the Class are Best Buy and any entities in which Best Buy has a controlling interest, Best Buy's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

133.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises tens of thousands of individuals. The exact number and identities of Class members are contained in Best Buy's records and can be easily ascertained from those records.

134.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether the alleged conduct of Best Buy violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.    Whether the alleged conduct of Best Buy violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c.    Whether the alleged conduct of Best Buy violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d.    Whether the alleged conduct of Best Buy violates 16 C.F.R § 233.1 *et seq.*;

e.    Whether Plaintiffs and the Class have suffered injury and have lost money or property as a result of Best Buy's unlawful conduct; and

f.    Whether Best Buy should be enjoined from engaging in the unlawful conduct alleged herein.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

135.    **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Best Buy's standard practices and schemes, bring the same claims, and face the same potential defenses.

136.    **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

137.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Best Buy's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

138.    By its conduct and omissions alleged herein, Best Buy has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

139.    Best Buy is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiffs against Best Buy in this Complaint arises from and are limited to statements or conduct by Best Buy that consist of representations of fact about Best Buy's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Best Buy's goods or the statements are or were made in the course of delivering Best Buy's goods. Each cause of action brought by Plaintiffs against Best Buy in this Complaint arises from and is limited to

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

statements or conduct by Best Buy for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq*.**

140.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

141.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

142.    Best Buy's Products are "goods" as defined by California Civil Code § 1761(a).

143.    Best Buy is a "person," as defined by Cal. Civ. Code § 1761(c).

144.    Plaintiffs and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

145.    Plaintiffs and Class members purchased Best Buy's Products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

146.    Plaintiffs and Class members' purchases from Best Buy each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

147.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Contra Costa County (which is located in this District). Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

148.    The unlawful methods, acts or practices alleged herein to have been undertaken by Best Buy were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Best Buy did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

149.     Best Buy's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.     Best Buy represented that the Products had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b.     Best Buy advertised the Products with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c.     Best Buy made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d.     Best Buy misrepresented that the Products were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)).

150.     With respect to any omissions, Best Buy at all relevant times had a duty to disclose the information in question because, inter alia: (a) Best Buy had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Best Buy concealed material information from Plaintiffs and Class members; and (c) Best Buy made partial representations which were false and misleading absent the omitted information.

151.     Best Buy intentionally deceived Plaintiffs and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

152.     Best Buy's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

153.     Best Buy's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

154.     As a direct, substantial, and/or proximate result of Best Buy's unlawful conduct, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.

155.     Plaintiffs and Class members reasonably relied on Best Buy's material misrepresentations, and would not have purchased Best Buy's Products at the prices that they paid had they known the truth.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

156.    Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Best Buy represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious reference prices advertised by Best Buy.

157.    By its conduct and omissions alleged herein, Best Buy caused the demand for the Products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Best Buy. Put differently, as a result of its misrepresentations, Best Buy has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

158.    **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the CLRA to protect the general public from Best Buy's false advertisements, misrepresentations, and omissions.

159.    Best Buy's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Best Buy absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Best Buy from committing the unlawful practices alleged herein.

160.    The balance of the equities favors the entry of permanent public injunctive relief against Best Buy. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Best Buy's ongoing false advertising absent the entry of permanent public injunctive relief against Best Buy.

161.    Plaintiffs lack an adequate remedy at law to prevent Best Buy from engaging in the unlawful practices alleged herein. Each Plaintiff would purchase Products from Best Buy again if he or she could have confidence regarding the truth of Best Buy's prices and the value of its Products. Each Plaintiff will be harmed if, in the future, he or she is left to guess as to

CLASS ACTION COMPLAINT

- 34 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

whether Best Buy is providing a legitimate sale or not, and whether Best Buy's Products are actually worth the amount that Best Buy is representing.

162.    Also, monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Best Buy from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) each Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Best Buy.

163.    In accordance with California Civil Code § 1782(a), Plaintiffs, through counsel, served Best Buy with notice of its CLRA violations by certified mail, return receipt requested, on January 2, 2024. If Best Buy fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiffs' notice letter, Plaintiffs will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

### COUNT II
### Violation of California's False Advertising Law ("FAL")
### California Business & Professions Code § 17500 *et seq.*

164.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

165.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

166.    Best Buy has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

167.    Best Buy has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (Feb. 5, 2014, Cal. Sup. Ct.) (same).

168.    Additionally, Best Buy has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Best Buy's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

169.    With respect to omissions, Best Buy at all relevant times had a duty to disclose the information in question because, inter alia: (a) Best Buy had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Best Buy concealed material information from Plaintiffs and Class members; and (c) Best Buy made partial representations which were false or misleading absent the omitted information.

170.    Best Buy committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Best Buy, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

171.    Best Buy's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

172.    Best Buy's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

173.    As a direct and proximate result of Best Buy's violations of the FAL, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

174.    Plaintiffs and Class members reasonably relied on Best Buy's material misrepresentations, and would not have purchased Best Buy's Products at the prices that they paid had they known the truth.

175.    Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Best Buy represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious reference prices advertised by Best Buy.

176.    By its conduct and omissions alleged herein, Best Buy caused the demand for the Products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Best Buy. Put differently, as a result of its misrepresentations, Best Buy has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

177.    By its conduct and omissions alleged herein, Best Buy received more money from Plaintiffs and Class members than it should have received. Best Buy should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

178.    Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

179.    **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the FAL to protect the general public from Best Buy's false advertisements, misrepresentations, and omissions.

180.    Best Buy's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Best Buy absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Best Buy from committing the unlawful practices alleged herein.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

181.    The balance of the equities favors the entry of permanent public injunctive relief against Best Buy. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Best Buy's ongoing false advertising absent the entry of permanent public injunctive relief against Best Buy.

182.    Plaintiffs lack an adequate remedy at law to prevent Best Buy from engaging in the unlawful practices alleged herein. Each Plaintiff would purchase Products from Best Buy again if he or she could have confidence regarding the truth of Best Buy's prices and the value of the Products. Each Plaintiff will be harmed if, in the future, he or she is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether Best Buy's Products are actually worth the amount that Best Buy is representing.

183.    Also, monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Best Buy from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) each Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Best Buy.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL")
### California Business & Professions Code § 17200 *et seq.*

184.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

185.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

186.    California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

187.    **"Unlawful" Prong.** Best Buy has violated the UCL by engaging in the following unlawful business acts and practices:

      a.    Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

      a.    Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

      b.    Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

      c.    Employing deceptive discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.*

188.    **"Unfair" and "Fraudulent" Prongs.** Best Buy has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

      a.    Advertising false reference prices;

      b.    Advertising false discounts, including dollar-off discounts; and

      c.    Advertising false "limited-time" sales.

189.    With respect to omissions, Best Buy at all relevant times had a duty to disclose the information in question because, inter alia: (a) Best Buy had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Best Buy concealed material information from Plaintiffs and Class members; and (c) Best Buy made partial representations which were false and misleading absent the omitted information.

190.    Best Buy's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

191.    Best Buy's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

192.     As a direct and proximate result of Best Buy's violations of the UCL, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.

193.     Plaintiffs and Class members reasonably relied on Best Buy's material misrepresentations, and would not have purchased Best Buy's Products at the prices that they paid had they known the truth.

194.     Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Best Buy represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Best Buy represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious reference prices advertised by Best Buy.

195.     By its conduct and omissions alleged herein, Best Buy caused the demand for the Products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Best Buy. Put differently, as a result of its misrepresentations, Best Buy has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Best Buy would have had to charge less for the Products in order to enjoy the same level of demand.

196.     By its conduct and omissions alleged herein, Best Buy received more money from Plaintiffs and Class members than it should have received. Best Buy should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

197.     Best Buy's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Best Buy's conduct is oppressive and substantially injurious to consumers. There is no utility to Best Buy's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Best Buy's conduct alleged herein.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

198.    Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

199.    **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seeks public injunctive relief under the UCL to protect the general public from Best Buy's false advertisements, misrepresentations, and omissions.

200.    Best Buy's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Best Buy absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Best Buy from committing the unlawful practices alleged herein.

201.    The balance of the equities favors the entry of permanent public injunctive relief against Best Buy. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Best Buy's ongoing false advertising absent the entry of permanent public injunctive relief against Best Buy.

202.    Plaintiffs lack an adequate remedy at law to prevent Best Buy from engaging in the unlawful practices alleged herein. Each Plaintiff would purchase Products from Best Buy again if he or she could have confidence regarding the truth of Best Buy's prices and the value of its Products. Each Plaintiff will be harmed if, in the future, he or she is left to guess as to whether Best Buy is providing a legitimate sale or not, and whether Best Buy's Products are actually worth the amount that Best Buy is representing.

203.    Also, monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Best Buy from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) each Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy)

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Best Buy.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Best Buy as follows:

1.     Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2.     Declare that Best Buy's conduct alleged herein violates the CLRA, FAL, and UCL;

3.     Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Best Buy obtained, directly or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged herein;

4.     Permanently enjoin Best Buy from engaging in the unlawful conduct alleged herein;

5.     Order that Best Buy maintain the following records for each daily Product[3] offering in its retail stores and on its website for at least two years from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; and (3) any discount that was advertised and/or applicable to each Product;

6.     Retain jurisdiction to monitor Best Buy's compliance with the permanent injunctive relief;

7.     Order any other equitable relief the Court deems appropriate;

---

[3] "Products" are defined in this Complaint as TVs and major appliances, such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    8.    Order Best Buy to pay attorneys' fees, costs, and pre-judgment and post-

2    judgment interest to the extent allowed by law; and

3    9.    Grant such other relief as the Court deems just and proper.

4    **DEMAND FOR JURY TRIAL**

5    Plaintiffs demand a trial by jury on all issues so triable.

6    Date: January 5, 2025.

7                            Presented by:

8                            HATTIS & LUKACS

9                            By:

10                           Daniel M. Hattis (SBN 232141)
                             Paul Karl Lukacs (SBN 197007)
11                           HATTIS & LUKACS
                             11711 SE 8th Street, Suite 120
12                           Bellevue, WA 98005
                             Telephone: (425) 233-8650
13                           Email: dan@hattislaw.com
                             Email: pkl@hattislaw.com

14                           *Attorneys for Plaintiffs*
                             *and the Proposed Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

- 43 -

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com